*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TYLER MAURICE TATE,

        Defendant-Appellant.

UNPUBLISHED
January 4, 2024

No. 338360
Wayne Circuit Court
LC No. 16-010656-01-FJ

## ON REMAND

Before: M. J. KELLY, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court. Defendant, Tyler Maurice Tate, was 16 years old when he aided Brendon Stanton-Lipscomb in killing Tyrell Lane. Tate was convicted of first-degree premediated murder MCL 750.316(a)(1), making a false report of a felony, MCL 750.411a(1)(B), and lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(*i*). On April 24, 2017, pursuant to MCL 769.25, the trial court sentenced Tate to a prison term of 40 to 60 years for the murder conviction, and concurrent terms of one to four years for each of the remaining convictions. In his first appeal, a panel of this Court rejected Tate's argument that "his sentence of 40 to 60 years in prison is disproportionate and unreasonable because he was only 16 years old at the time of the offense" and held that "the trial court did not abuse its discretion by sentencing Tate to a prison term of 40 to 60 years for his murder conviction."[1] Tate applied for leave to appeal to the Michigan Supreme Court, which, after consolidating the appeal with *People v Boykin*, remanded the case to this Court for further consideration of whether the trial court adequately took into account Tate's youth as a mitigating

---

[1] *People v Tate*, unpublished per curiam opinion of the Court of Appeals, issued September 20, 2018 (Docket No. 338360) (*Tate I*), pp 6-8.

factor when imposing the sentence of 40 to 60 years.[2] On remand, in a 2-1 opinion, this Court again affirmed Tate's sentence.[3] Thereafter, Tate applied for leave to appeal to the Michigan Supreme Court, which, in lieu of granting leave, has now remanded the case to this Court "for consideration of [Tate's] argument that his sentence was disproportionate under the standard set forth in *People v Milbourn*, 435 Mich 630, 636 (1990)."[4] For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The underlying facts were summarized by our Supreme Court in *Boykin*:

> Defendant Tyler Maurice Tate was involved in a gang-related shooting when he was 16 years old. Tate, Tyshon Taylor, Brendon Stanton-Lipscomb, and Demetrius Armour were all affiliated with a gang known as the Eastside Ghetto Boys or Rob Gang. Tate and Taylor were at the Eastland Mall in Harper Woods on December 26, 2015, when they overheard the victim make a disparaging remark about the Rob Gang. After Stanton-Lipscomb was called and informed of what had happened, Stanton-Lipscomb asked for the victim to be escorted outside, where Stanton-Lipscomb planned to shoot him. Tate then led the victim and another person to the outside of the mall, where Stanton-Lipscomb was hiding. Stanton-Lipscomb shot the victim several times, causing fatal wounds. The other individual escaped without injury. [*Boykin*, slip op at 5.]

## II. PROPORTIONALITY

### A. STANDARD OF REVIEW

In this appeal,[5] Tate argues that his sentence is disproportionate because he does not fall within the most serious class of offenders convicted of first-degree murder given that he was only

---

[2] See *People v Boykin*, 510 Mich 171, 196; 987 NW2d 58 (2022).

[3] *People v Tate (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued January 5, 2023 (Docket No. 338360) (*Tate II*).

[4] See *People v Tate*, 994 NW2d 790 (2023).

[5] In his application to the Supreme Court, Tate raised two issues: (1) whether his sentence was disproportionate given that his status as a juvenile and as an aider and abettor gave him " 'twice diminished' culpability," rendering his sentence disproportionate; and (2) whether the trial court and this Court erred by determining that the purposefulness of Tate's actions meant that they could not be attributed to his youth. In his first issue, he argued that his youth necessarily set him apart from the worst category of offenders, delegitimizing the sentencing court's choice to sentence him at the high end of the statutory range. This issue also incorporated Tate's arguments that he is less culpable than defendants who have principally perpetrated a homicide, who commit a homicide in an exceptionally vicious manner, or who have significant criminal backgrounds. Tate's second issue directly challenged this Court's decision in *Tate II* that his youth was not a mitigating factor

a juvenile aider and abettor of an adult gang leader. Appellate courts must review all sentences for reasonableness, which is assessed by examining whether the trial court abused its discretion by imposing a sentence that is disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 29.

## B. ANALYSIS

Tate asserts that his youth, his role as an aider or abettor, and his lack of a serious criminal background are all factors that place him outside the category of offenders deserving the longest term-of-years sentence permissible under MCL 769.25. We disagree.

MCL 769.25 governs the sentencing of criminal defendants convicted of first-degree murder who were less than 18 years of age at the time they committed the underlying offense. "If the court decides not to sentence the individual to imprisonment for life without parole, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25(9).

In *People v Steanhouse*, 500 Mich 453, 473; 902 NW2d 327 (2017), our Supreme Court reaffirmed the principle of proportionality adopted in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). In *Milbourn*, the Court held "that the Legislature, in setting a range of allowable punishments for a single felony, intended persons whose conduct is more harmful and who have more serious prior criminal records to receive greater punishment than those whose criminal behavior and prior record are less threatening to society." *Id*. at 651. The Court explained the relationship between a sentencing judge's discretion and the continuum of the sentencing range:

> [W]e have observed that different sentencing judges often subscribe to markedly different sentencing philosophies. For example, some judges may feel that any commission of a certain felony, even though the facts surrounding a particular criminal episode clearly do not justify worst-case treatment, should be answered with the maximum possible sentence. . . . With regard to the principle of proportionality, it is our judgment that the imposition of the maximum possible sentence in the face of compelling mitigating circumstances would run against this principle and the legislative scheme. . . . The trial court appropriately exercises the discretion left to it by the Legislature *not* by applying its own philosophy of

---

because he acted purposefully. Our Supreme Court remanded for consideration of Tate's proportionality argument, but denied leave to appeal in all other respects "because we are not persuaded that the remaining question presented should be reviewed by this Court." The Supreme Court's remand order thus requires this Court to consider Tate's youth as it relates to the proportionality of his sentence, but this Court's decision in *Tate II* regarding consideration of youth as a mitigating factor under MCL 769.25, *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and *People v Wines*, 323 Mich App 343; 916 NW2d 855 (2018), rev'd in part on other grounds 506 Mich 954 (2020), remains undisturbed.

sentencing, but by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination. [*Id*. at 653-654.]

"Where a given case does not present a combination of circumstances placing the offender in either the most serious or least threatening class with respect to the particular crime, then the trial court is not justified in imposing the maximum or minimum penalty, respectively." *Id*. at 654.

Tate argues that his culpability is "twice diminished" because (1) he was only 16 years old when he committed the offense, and (2) because he was not the principal offender. He contends that his age and his status as an aider or abettor both place him outside the category of the most serious offenders. Tate states that the aiding or abetting statute, MCL 767.39, was intended "to shift aiding and abetting from a 'distinct criminal act' to a 'theory of prosecution' " without mandating that both types of offenders receive the same sentence. MCL 767.39 provides:

Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.

Thus, although Tate argues that this statute does not mandate the same sentence for principals and aiders or abettors, the statute plainly states that an aider or abettor "shall be punished as if he had directly committed such offense."

Tate also asserts that aiders or abettors "by definition" do not fall within the most serious class of offenders. He suggests that diminished culpability for aiders or abettors and for young offenders are fixed principles of proportionality, but the legal authorities are more nuanced than that.

In *People v Parks*, 510 Mich 225, 260 n 13; 987 NW2d 161 (2022), our Supreme Court held that "a defendant's status as an aider and abettor is undoubtedly relevant in the punishment context." The *Parks* Court concluded that a mandatory life without parole (LWOP) sentence for an 18-year-old offender violates Michigan's constitutional prohibition against cruel or unusual punishment for the same reasons supporting the United States Supreme Court's decision in *Miller*. *Id*. at 266-268. However, the Court in *Parks* made no broad pronouncement regarding sentencing of aiders or abettors. Moreover, a major factor in the Court's decision in *Parks* was that a term of life for an 18-year-old offender is disproportionate because he would spend a substantially longer portion of his life in prison than a juvenile offender sentenced to a term of years under MCL 769.25 or a middle-aged offender sentenced to a mandatory LWOP term. *Id*. at 260-263. This analysis does not apply to a term-of-years sentence. Although *Parks* represents an overall trend favoring more lenient sentences for young offenders, it does not support Tate's argument against a 40-year minimum term for a young offender, or for broadly lenient treatment of aiders or abettors.

In *People v Taylor*, 510 Mich 112; 987 NW2d 132 (2022) (*Taylor I*), the defendant was 16 years old when he and a 17-year-old co-offender abducted the victim, held him captive for several hours, stole his money and vehicle, and brought him to a drug den before shooting him and leaving his body in a burned-out house. *Id*. at 120. The defendant was convicted of first-degree felony

murder under an aiding or abetting theory. *Id*. at 121. He originally received a mandatory LWOP sentence, which was vacated for resentencing under *Miller* and MCL 769.25. *Id*. at 121-122. He was resentenced to another LWOP term. *Id*. at 122-123. The Supreme Court held that the prosecutor had the burden of rebutting a presumption that the juvenile defendant did not deserve a LWOP sentence. *Id*. at 138-139. The Court remanded to this Court to decide whether the LWOP sentence violated the constitutional prohibition against cruel or unusual punishment. *Id*. at 139. On remand, this Court rejected the defendant's argument that *Miller* categorically prohibited a LWOP sentence for a juvenile convicted of felony murder under an aiding or abetting theory. *People v Taylor*, unpublished per curiam opinion of the Court of Appeals, issued March 9, 2023 (Docket No. 325834), lv pending (*Taylor II*).[6] The Court in *Taylor II* remanded to the trial court to address whether the prosecutor overcame the presumption that LWOP is a disproportionate sentence. *Id*., unpub op at 12-13. The Court opined "that the Supreme Court might favorably view a categorical bar to LWOP where a juvenile—with malice but without premeditation and deliberation—does not directly kill a victim but only aids and abets the crime, even though an underlying felony would also be in play." *Id*. *Taylor II* thus contemplates that LWOP could be an appropriate sentence for a juvenile offender convicted of first-degree felony murder under an aiding or abetting theory. This holding thus supports imposition of a 40-year term on a juvenile offender convicted of first-degree premeditated murder under an aiding or abetting theory.

Tate also directs this Court to cases in which a 40-year term was deemed appropriate for a juvenile offender who committed homicides in more egregious circumstances compared to the circumstances of Lane's murder. In *People v Abbatoy*, unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 357766), the defendant and his co-defendant, Anthony DePalma, planned to steal DePalma's mother's car. The defendant beat her on the head with a shovel to knock her unconscious and give defendant and DePalma a head start before she reported them to the police. When DePalma's mother got up and went inside her house, the defendant chased her, forcibly entered her home, ripped the phone off the wall, and hit her on the head with the shovel again. She fell to the floor, but the defendant maintained that she was still breathing. The defendant claimed that he "told DePalma that if he wanted his mother dead, he would have to do it himself," and that DePalma then went upstairs and returned with the shovel. DePalma's mother died from severe head injuries. *Id*., unpub op at 2. The defendant and DePalma were both convicted of first-degree felony murder and were originally sentenced to LWOP. Post-*Miller*, the defendant was resentenced to 40 to 60 years' imprisonment. *Id*., unpub op at 1. This Court held that the trial court failed to consider the defendant's youth as a mitigating factor as required by *Boykin* and remanded for resentencing. *Id*., unpub op at 4-5. Moreover, the trial court was not required to impose a shorter sentence on the defendant than on DePalma because the court found that it was the defendant who inflicted most of the blows delivered to the victim, so they were not similarly situated. *Id*., unpub op at 6.

In *People v Harris*, unpublished per curiam opinion of the Court of Appeals, issued November 29, 2016 (Docket No. 327340), the defendant and the victim were members of rival

---

[6] Unpublished decisions are not binding, but they can be considered for their persuasive authority. *People v Roy*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2023) (Docket No. 359894), slip op at 4 n 2.

gangs. The defendant shot the victim in the head while the victim was walking away from the defendant. *Id.*, unpub op at 1. The defendant was 15 years old when he shot the victim. *Id.*, unpub op at 4. The defendant was convicted of first-degree murder and sentenced to a prison term of 40 to 60 years. *Id.*, unpub op at 1, 3-4. The defendant in *Harris* did not argue that the sentence was disproportionate. The defendant raised an issue regarding whether a jury must decide if a LWOP sentence is appropriate when the prosecutor moves for imposition of a LWOP sentence. This Court concluded that the issue was without merit. *Id.*, unpub op at 4-5.

In *People v Hendrick*, unpublished per curiam opinion of the Court of Appeals, issued November 19, 2019 (Docket No. 344348), the defendant was convicted of felony murder, with armed robbery and carjacking as the predicate felonies, and carrying a dangerous weapon with unlawful intent. *Id.*, unpub op at 1. This Court upheld a 40-year minimum sentence for the 17-year-old defendant who "lay in wait for the victim," repeatedly assaulted the victim, and chased him when he fled." This Court rejected the defendant's argument that the trial court did not adequately consider his youth as a mitigating factor. *Id.*, unpub op at 4.

In *People v Cowans*, unpublished per curiam opinion of the Court of Appeals, issued March 21, 2017 (Docket Nos. 329235 & 330223), the trial court sentenced the defendant to 30 to 60 years in prison. The defendant killed his jail cellmate by pulling him to the floor, punching and kicking him in the head for a prolonged period, and causing severe bleeding and fatal brain damage. *Id.*, unpub op at 2-3. This Court upheld the sentence. This Court observed that "certain aggravating circumstances existed in this case that warranted a harsh sentence." The defendant "was just two months shy of his 18th birthday," and the attack was "extremely brutal and unprovoked." The trial court also considered "several mitigating factors, including that defendant was less mature than the average person his age due to his mental health and substance abuse issues; the likelihood of recidivism was low; defendant had the support of family and friends, and defendant showed genuine remorse for his actions." *Id.*, unpub op at 5.

The homicides in *Abbatoy* and *Cowans* surpass Lane's murder in terms of brutality. Nevertheless, Lane's murder was a coldly-calculated execution in retaliation for a verbal insult to Tate's gang. Tate's role in the murder was not minor. He made the murder possible by bringing Lane directly to Stanton-Lipscomb, knowing that Stanton-Lipscomb intended to shoot him dead. The murder included the element of lying in wait similar to *Hendrick*, and the killing of a gang rival who posed no threat to the killers, similar to *Harris*. Although Tate's lack of a significant criminal record was a factor weighing against a severe sentence, his willingness to take part in Stanton-Lipscomb's plan detracts from his moral character. Indeed, the record reflects that he volunteered for the role after a different gang member had refused. Moreover, although Tate's minimum sentence was at the high end of the 25-to-40-year range, it is not the most severe sentence permitted by MCL 769.25, which allows for a sentence of life imprisonment without parole. Under the circumstances present in this case, therefore, we conclude that Tate has failed to demonstrate that his sentence violates the principle of proportionality.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey